FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 19, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERESA S., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY <br><br> Defendant. | No. 1:20-CV-03053-JTR <br><br> ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 20, 31. Attorney D. James Tree represents Teresa S. (Plaintiff); Special Assistant United States Attorney Martha Boden represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 1

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on August 20, 2014, alleging disability since January 12, 2011, due to back pain, headaches, left arm pain and numbness, neck pain, memory loss, depression, anxiety, hypertension, thyroid problem, and diabetes. Tr. 84-85. The applications were denied initially and upon reconsideration. Tr. 144-52, 155-67. Administrative Law Judge (ALJ) Virginia Robinson held a hearing on February 9, 2017, Tr. 40-83, and issued an unfavorable decision on November 29, 2017, Tr. 16-30. Plaintiff requested review by the Appeals Council and the Appeals Council denied Plaintiff's request for review on August 31, 2018. Tr. 1-5. Plaintiff filed a civil action in this court and on April 17, 2019, the court issued the parties' stipulated motion to remand for further proceedings. Tr. 1401-02.

On December 31, 2019, ALJ Robinson held a remand hearing, Tr. 1302-24, and on February 5, 2020, she issued a second unfavorable decision. Tr. 1264-90. Plaintiff did not file written exceptions with the Appeals Council and the Appeals Council did not review the decision on its own motion; therefore the ALJ's February 2020 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Tr. 1262. Plaintiff filed this action for judicial review on April 23, 2020. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was born in 1966 and was 44 years old as of her alleged onset date. Tr. 84. She has a high school education and worked primarily as a home aid caregiver and nurse assistant. Tr. 73, 393. She has experienced a number of physical incidents, including being assaulted by a patient in 2004 and being in a motor vehicle accident in 2009. Tr. 524, 2064. In 2011 she had surgery on her left shoulder. Tr. 905-07. She subsequently developed back pain and in 2016 she underwent a lumbar fusion. Tr. 1190-91, 1238-40. Over the years she periodically

had injections in both elbows for epicondylitis. Tr. 1232, 1673, 1677, 1818, 2105. Over the course of the relevant period, she was also treated for depression, anxiety, diabetes, and various other acute issues.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through

four, the claimant has the burden of establishing a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On February 5, 2020, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 1268.

At step two, the ALJ determined Plaintiff had the following severe impairments: spinal impairment, left shoulder impairments, bilateral elbow impairment/epicondylitis, affective disorder(s), and anxiety disorder(s). *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 1270-71.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light exertion level work with the following limitations:

> She can lift or carry up to 20 pounds occasionally and up to 10 pounds frequently, stand or walk for approximately 6 hours and sit for approximately 6 hours per 8 hour work day with normal breaks. She can occasionally climb ramps or stairs; never climb ladders, ropes, or

       scaffolds. She can frequently balance, stoop, kneel, crouch, and only occasionally crawl. She can engage in frequent handling and fingering bilaterally. She can frequently reach overhead with left upper extremity. She should avoid concentrated exposure to excessive vibration and workplace hazards such as working with dangerous machinery and working at unprotected heights. She can perform simple routine tasks, in a routine work environment. She can make simple work related decisions with normal breaks. She can have superficial interaction with coworkers, with no teamwork or supervising other employees required as part of the job. She can have superficial contact with the public.

Tr. 1271.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a home attendant and resident care aide. Tr. 1288-89.

At step five the ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, specifically identifying the representative occupations of cleaner housekeeping, production line assembler, and inspector/hand packager. Tr. 1289-90.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. Tr. 1290.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) improperly assessing the severe impairments at step two; (2) not properly assessing Plaintiff's subjective testimony; and (3) not properly assessing the medical opinion evidence.

///

# DISCUSSION

## 1. Plaintiff's subjective statements

Plaintiff contends the ALJ erred by improperly rejecting her subjective statements. ECF No. 20 at 5-15.

It is the province of the ALJ to make determinations regarding a claimant's subjective reports. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 1273. The ALJ found the medical evidence of record did not substantiate Plaintiff's allegations regarding her physical or mental limitations. Tr. 1273-80. The ALJ further found Plaintiff's work history (including vocational training and job search), receipt of unemployment benefits, and activities contradicted her allegations. Tr. 1280-82.

///

1    Plaintiff asserts the ALJ erred in discounting her reports, arguing the ALJ
2 omitted supportive objective findings from her summary, failed to explicitly
3 identify alleged inconsistencies, and ignored the context of comments regarding
4 improvement and various activities. ECF No. 20 at 5-15. Defendant argues the ALJ
5 reasonably considered the support from the medical record and evidence of
6 improvement with treatment, arguing Plaintiff is simply offering an alternative
7 interpretation of the evidence. ECF No. 31 at 8-11.
8    The Court finds the ALJ did not offer clear and convincing reasons for
9 discounting Plaintiff's subjective reports.
10    *a. Activities*
11    The ALJ found Plaintiff's exercise and social activities, including walking,
12 visiting friends, and attending sporting events and church, did not support and
13 plainly contradicted Plaintiff's allegations that her physical and mental functioning
14 was extremely limited. Tr. 1281.
15    A claimant's daily activities may support an adverse credibility finding if the
16 claimant's activities contradict her other testimony. *Orn v. Astrue*, 495 F.3d 625,
17 639 (9th Cir. 2007). However, the ALJ failed to identify any actual inconsistency
18 between these minimal and sporadic activities and Plaintiff's allegations. The
19 record reflects Plaintiff would occasionally take short walks for exercise, but that
20 she sometimes was unable to do so because of pain or lack of motivation due to her
21 mental health. Tr. 1681, 1733, 1749, 1750, 1758, 1760, 1771, 1782, 1810, 1853,
22 2084, 2085, 2113. There is nothing inconsistent about this activity. Similarly,
23 Plaintiff never claimed to be completely unable to engage in social activities or
24 leave her home. Tr. 1272-73. Therefore, her ability to occasionally visit with
25 friends and family and attend church does not demonstrate any inconsistency with
26 her allegations or testimony at the hearing. The ALJ failed to indicate what
27 testimony she found to be contradicted by these activities.
28    ///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 7

Therefore, this was not a clear and convincing reason to discount Plaintiff's allegations.

*b. Work activity and unemployment benefits*

The ALJ found Plaintiff's allegations to be contradicted by her employment activities, including working jobs that did not end due to her impairments and her job searching activities during the relevant period. Tr. 1280-81. The ALJ further found her vocational retraining and receipt of unemployment benefits indicated she was capable of some work. *Id.*

The Court finds this discussion does not constitute clear and convincing reasons for discounting Plaintiff's allegations, at least not for the entire relevant period. An ALJ may consider past work, the reasons for leaving employment, or evidence that a claimant's condition has not prevented them from working in the past and has remained constant for a number of years. *See e.g., Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly relied on the fact that claimant left his job because he was laid off, rather than because he was injured, in finding the claimant's statement unreliable); *Trevizo v. Berryhill,* 871 F.3d 664, 681 (9th Cir. 2017); *Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988). However, all of the activities cited by the ALJ occurred in 2014 or 2015, while the record indicates Plaintiff's back pain and elbow conditions developed after or simultaneously with the activities the ALJ identified. Tr. 584 (2/2013, developing shoulder and back pain with increased keyboarding from vocational retraining, needs ergonomic accommodations); 1044 (5/2014, begins reporting back pain that radiates into left leg); 1097 (11/2014, begins pain management for back pain); 1087 (3/2015, increased back pain with new job); 1239-40 (11/2015, consult with orthopedic surgeon for back pain); 1121 (1/2016, begins reporting elbow pain); 1231-32 (6/2016, injections for elbow pain); 1190-91 (9/2016, lumbar fusion surgery). While the ALJ's discussion of Plaintiff's vocational activities may be a reason to discount her allegations of disability back to 2011, the ALJ failed to

explain how these factors detracted from Plaintiff's testimony regarding the worsening of her physical condition over the following years.

With respect to Plaintiff's ongoing job search activities, the ALJ's implication that Plaintiff's job search stagnated due to lack of transportation omits the remainder of the treatment note where Plaintiff indicated she did not think she could work due to pain and mental health conditions, even if she had gotten calls back from her applications. Tr. 1734. The fact that Plaintiff was attempting to find some work does not indicate she was actually capable of performing the jobs she was applying for and does not undermine her allegations of significant limitations.

*c. Objective evidence*

An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptom statements. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). But this cannot be the only reason provided by the ALJ. *See Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

The ALJ engaged in an extensive discussion of the objective medical evidence regarding Plaintiff's physical and mental conditions, finding the evidence did not support that her conditions were as seriously restricting as alleged. Tr. 1273-80. However, because none of the ALJ's other reasons reach the clear and convincing level, the ALJ's summary of Plaintiff's treatment over the years does not on its own constitute a clear and convincing basis to discount her allegations of disabling pain and other symptoms.

///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 9

The Court further notes that the ALJ's discussion fails to acknowledge the changing circumstances of Plaintiff's medical conditions. For example, the ALJ discounts Plaintiff's allegations regarding back pain because she improved following her lumbar surgery in 2016. Tr. 1274. However, this fails to take into consideration the greater than two years of back pain Plaintiff reported prior to receiving the surgery, the months of recovery following the surgery, and the residual pain and limitations she had, despite improving. Tr. 1037-44 (early reports of back pain in 2014); 1239-40 (orthopedic consultations in 2015); 1190-91 (surgery in 2016); 1879-1903 (physical therapy for back, slow progress, using a walker); 1668-70 (one year post-surgery still has pain, but overall satisfied with results). By issuing one RFC covering the entire relevant period, the ALJ failed to account for the changing circumstances of Plaintiff's physical condition. Similarly, as discussed further below, Plaintiff's mental health issues evolved over the years, with treatment beginning in earnest in 2016 (Tr. 1225), yet the ALJ discounted Plaintiff's mental health reports due to lack of evidence in the earlier years. On remand, the treatment records must be viewed in light of the overall context and diagnostic record. *See Holohan v. Massanari*, 246 F.3d 1195, 1205, 1208 (9th Cir. 2001).; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008).

**2.   Medical Opinion Evidence**

Plaintiff asserts the ALJ improperly evaluated the medical opinion evidence, including opinions regarding Plaintiff's physical functioning from Dr. Liu, Ms. Hahn, Ms. Franck, Dr. Drenguis, and Dr. Saue, and opinions on Plaintiff's mental functioning from Drs. Beachy, Sawyer, Bowes, Petaja, Sanchez, and Ford.

When a treating or examining physician's opinion is contradicted by another physician, the ALJ may reject the treating physician's opinion for "specific and legitimate reasons" based on substantial evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed

and thorough summary of the facts and conflicting clinical evidence, stating their interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer their conclusions, they "must set forth [their] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

*a. Dr. Liu, Ms. Hahn, Ms. Franck*

In 2011 and 2012, following left shoulder surgery, Plaintiff was seen by multiple treating providers in connection with her claim through the Department of Labor and Industries, with the providers completing Activity Prescription Forms limiting her ability to work, or otherwise commenting on her work restrictions while recovering from surgery. Tr. 545, 562, 574, 577, 586-92, 653, 659, 899, 988, 990, 1005-09, 1161.

The ALJ adopted the findings and analysis from her prior decision regarding these opinions, and assigned them little weight, noting they were temporary and that a November 2015 exam showed generally normal range of motion and functionality. Tr. 27, 1283. She further generally found the limitations were not supported by the objective evidence and conflicted with Plaintiff's activities, noting that when extreme limitations are not supported, "it indicates that the author has either inaccurate information regarding symptoms, limitations, activities and abilities, does not fully understand the functional activities being rated, or is serving as an advocate." Tr. 27.

Plaintiff argues the ALJ violated the rule of mandate by failing to reevaluate the opinion evidence, and argues that the ALJ's analysis is too general, unsupported by any citations, and inconsistent with the record showing objective limitations on Plaintiff's use of her shoulder. ECF No. 20 at 16-19. Defendant

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 11

argues the ALJ did not err in adopting her prior analysis, as the remand order only specifically directed reconsideration of Dr. Sawyer's opinion, and asserts that the ALJ offered sufficient reasons for discounting the temporary opinions and reasonably interpreted the record in finding the opinions unsupported by the record and Plaintiff's activities. ECF No. 31 at 12-14.

The Court finds the ALJ did not violate the rule of mandate, as the remand order only directed specific reconsideration of Dr. Sawyer's opinion. Tr. 1401-02, 1413-14. The ALJ adopted her prior findings in light of her further review of the medical record. Tr. 1283.

However, the Court finds the ALJ failed to offer sufficient reasons for disregarding the opined limitations. Though each individual form assessed temporary restrictions in light of Plaintiff's ongoing recovery from surgery, when read together the opinions cover a period from Plaintiff's surgery in January 2011 through April 2012. Tr. 899, 1009. Dr. Liu asserted Plaintiff's limitations as of early 2012 were permanent. Tr. 659, 1009. The Commissioner's assertion that these opinions were temporary and thus not indicative of whether Plaintiff was disabled is not supported.

Furthermore, the Court finds the ALJ's discussion of the lack of support from the objective evidence to be unavailing. The only citation the ALJ provided was from a physical exam of Plaintiff's lumbar spine in November 2015. Tr. 1238. This has no bearing on whether limitations relating to Plaintiff's shoulder in 2011 and 2012 were accurate and supported. The record reflects tenderness, somewhat decreased strength, and some limits on range of motion in the shoulder and upper back throughout the period covered by Liu, Hanh, and Franck's opinions. Tr. 542-43, 548, 565-68, 963, 975, 980, 984. If a treating provider's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir.2008); *see also*

*Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *See Ryan v. Comm'r of Soc. Sec,* 528 F.3d 1194, 1199-1200 (9th Cir. 2008). The ALJ did not identify any evidence in support of her conclusion that the providers unduly relied on Plaintiff's assertions or were acting as advocates. Additionally, as discussed above, the ALJ failed to offer legally sufficient reasons for discounting Plaintiff's subjective complaints.

Finally, the ALJ failed to specify what activities during this period she found to be inconsistent with the opinions. On remand, the ALJ shall reconsider the opinions from these sources regarding Plaintiff's shoulder limitations.

*b. Dr. Drenguis*

Plaintiff attended a consultative physical exam with Dr. William Drenguis in December 2018. Tr. 1809-15. Dr. Drenguis opined Plaintiff was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, could sit for about six hours, and could stand and walk at least two hours. He assessed additional postural, manipulative, and environmental limitations. Tr. 1814-15. The ALJ found this opinion generally persuasive, other than the limitation on standing and walking and the environmental restrictions, which she found to be inconsistent with the exam and unsupported by the longitudinal record showing normal gait and lower extremity functioning. Tr. 1284-85.

Plaintiff argues the ALJ erred in finding the opinion unsupported by the doctor's own exam and the record as a whole, as there is consistent objective evidence relating to Plaintiff's spine limitations. ECF No. 20 at 21. Defendant argues the ALJ's interpretation of the record was reasonable and the court should defer to the ALJ rather than Plaintiff's alternative interpretation of the file. ECF No. 31 at 15-16.

///

1    The Court finds the ALJ erred. Dr. Drenguis stated that Plaintiff was limited
2 in standing and walking due to the degenerative changes in her lumbar spine and
3 her chronic cervical sprains. Tr. 1814. His exam noted objective findings for these
4 conditions, including only being able to perform half of a squat, tenderness to the
5 cervical and lumbar spine, and less than normal range of motion in her neck, back,
6 and shoulders. Tr. 1812-13. The ALJ did not mention these abnormal findings and
7 summarized only the normal findings from the exam. Therefore, her conclusion
8 that the opinion was inconsistent with the exam is not supported.
9    In terms of the record as a whole, the Court finds the ALJ's string-cite of
10 "normal gait and lower extremity functioning" is insufficient to serve as a basis for
11 disregarding Dr. Drenguis' opinion. Most notably, the vast majority of the ALJ's
12 citations are to visits that did not revolve around her back problems. *See, e.g.,* Tr.
13 1697-1720, 1861-65, 2119 (urology records); 1677, 1820, 1908, 1932, 1935, 1941,
14 2180 (treatment for epicondylitis); 1752, 1762, 1774, 1781, 2111, 2140-58
15 (treatment for diabetes, constipation, depression). Even when the citations do
16 include indications of normal gait and lower extremity functioning, it is not clear to
17 the court that this undermines Dr. Drenguis' findings, as the limitations on
18 Plaintiff's abilities stem from her spinal impairment, which is well-documented
19 through imaging and her spinal fusion in 2016.
20    Therefore, the Court finds the ALJ did not offer specific and legitimate
21 reasons for discounting Dr. Drenguis' opinion regarding Plaintiff's ability to stand
22 and walk.
23    *c. Drs. Bowes, Petaja, and Sanchez*
24    Plaintiff attended a consultative psychological exam with Dr. Tasmyn
25 Bowes in April 2018. Tr. 1680-91. Dr. Bowes assessed persistent depressive
26 disorder, chronic major depression, and rule out generalized anxiety disorder. Tr.
27 1682. She opined Plaintiff had no more than moderate limitations in most work-
28 related functional areas, but was markedly impaired in her ability to understand,

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 14

remember, and persist in tasks by following detailed instructions. Tr. 1683. This opinion was reviewed by Dr. Phyllis Sanchez, who agreed with the diagnoses and limitations. Tr. 1692.

Plaintiff attended a second exam with Dr. Bowes in October 2018. Tr. 1784-91. She updated the diagnoses and opined Plaintiff was now severely limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and was markedly impaired in communicating and performing effectively in a work setting and completing a normal work week without interruptions from psychologically based symptoms. Tr. 1787. This report was reviewed by Dr. Holly Petaja, who concurred with the severity and functional limits assessed. Tr. 1824.

The ALJ addressed these four opinions concurrently, finding the mild and moderate limitations were generally consistent with the record, but finding the remainder to be unpersuasive, as Dr. Bowes offered no basis for the marked deterioration in Plaintiff's condition between the two exams, and finding the opinions were inconsistent with the generally unremarkable mental status exams conducted by Dr. Bowes and the longitudinal record demonstrating intact mental functioning. Tr. 1285-86. The ALJ further noted Dr. Bowes did not review any of Plaintiff's medical records, all of which suggested the opinions were primarily based on Plaintiff's self-reports. *Id.*

Plaintiff argues the ALJ erred, as Dr. Bowes' exams did include supportive findings in the mental status exams, and asserts that the ALJ did not properly assess the longitudinal mental health objective evidence. ECF No. 20 at 24-25. Defendant argues the ALJ reasonably discounted all of the psychological opinions as inconsistent with the overall record, noting Plaintiff simply offers a different interpretation. ECF No. 31 at 16-17.

The Court finds the ALJ erred. As an initial matter, Dr. Bowes' mental status exams were not "generally unremarkable." At the first exam, Plaintiff's

performance on concentration testing supported marked deficits in her cognitive functioning, and she displayed dysphoric mood, blunted affect, and low energy. Tr. 1681-84. Her mental status exam was not within normal limits with respect to fund of knowledge, abstract thought, insight, and judgment. Tr. 1685. On the second exam Dr. Bowes noted Plaintiff to be irritable and resentful and exhibiting paranoia and reporting auditory hallucinations, and that her concentration was not within normal limits based on the results of the Trail Making test. Tr. 1788-89. These are not generally unremarkable findings. Furthermore, the ALJ failed to recognize that Dr. Petaja and Dr. Sanchez both opined that Dr. Bowes' reports were supported by the available objective medical evidence. Tr. 1692, 1824. An ALJ may not substitute her own interpretation of the raw data of a medical exam.

Regarding the ALJ's finding that the record as a whole did not support the opinions because it indicated Plaintiff maintained intact mental functioning, the Court finds the ALJ's analysis to be insufficient. As with the discussion above regarding Dr. Drenguis, the ALJ's string-cite of records supposedly demonstrating intact mental functioning largely includes records that do not pertain to Plaintiff's mental health treatment, and contain few if any mental findings, frequently noting only that she was alert and oriented. *See, e.g.,* Tr. 1697-1722, 1861-65, (urology records); 1069, 1122, 1126, 1130, 1740, 1745, 1765, 1837, 1845, 2124, 2174, 2186, 2200, 2216, 2285, 2291-93 (treatment for diabetes, elbow pain, and various other acute physical problems). A number of the records cited pre-date Dr. Bowes' exams by many years. Tr. 594, 603, 1018, 1042, 1069, 2016, 2068. None of the cited records include formal mental status exams such as those administered by Dr. Bowes, other than the ones done by Dr. Ford and Dr. Sawyer, both of whom the ALJ also found to be unpersuasive. Tr. 1282-83, 1286-87. Therefore, substantial evidence does not support the ALJ's assessment that these records show intact mental functioning. Moreover, the record as a whole does include objective findings of Plaintiff's mental impairments, such as depressed and anxious mood

and affect, rumination, irritation, anger, fleeting suicidal ideation, poor concentration, lethargy, and tearfulness. Tr. 1208, 1211, 1219, 1222, 1225, 1733, 1744, 1747-49, 1753-55, 1759, 1767, 1770-73, 1778, 1782, 1832-34, 1840, 1843, 1848, 1853-54, 2084-86, 2091-95, 2102-04, 2110-15, 2151, 2170, 2289-90.

Thus, the Court finds that the ALJ's rationale is not supported by substantial evidence.

### d. Remaining medical source opinions

Plaintiff assigns error to several other treating and examining source opinions. The Court notes the ALJ used the same string-cite of records in rejecting Dr. Beachy, Dr. Sawyer, and Dr. Ford's opinions regarding Plaintiff's mental functioning. Given the ALJ's errors in evaluating the medical evidence discussed above, reassessment of the other medical opinions is also warranted.

**3.   Step two findings**

Plaintiff argues the ALJ erred at step two by failing to find obesity and sleep apnea[1] to be severe impairments. ECF No. 20 at 3-5.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has any medically determinable severe impairments. 20 C.F.R. §§ 404.1520(a)(ii), 416.920(a)(ii). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). "An

---

[1] Plaintiff briefly asserts that the ALJ erred in failing to consider listing 3.02(c)(3) regarding Plaintiff's SpO$_2$ pulse oximetry levels. ECF No. 20 at 5. However, the listing requires numerous other findings that Plaintiff does not address in her briefing. *See* 20 C.F.R Part 404, Subpart P, Appendix 1, Sec. 3.02(c)(3). Plaintiff has not made any argument that her condition satisfies the full criteria of this listing.

1  impairment or combination of impairments can be found not severe only if the
2  evidence establishes a slight abnormality that has no more than a minimal effect on
3  an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.
4  1996) (internal quotation marks omitted). The step-two analysis is "a de minimis
5  screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433
6  F.3d 683, 687 (9th Cir. 2005).

7  The ALJ found Plaintiff was treated for a number of conditions that did not
8  cause any significant functional limitations or did not last for a continuous period
9  of 12 months, including obesity and sleep apnea. Tr. 1268-69. Because this claim
10 is being remanded for reconsideration of Plaintiff's subjective statements and the
11 medical opinion evidence, the ALJ will reconsider which of Plaintiff's
12 impairments are severe, including considering any additional evidence that may be
13 submitted on remand.

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for the payment of benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

The ALJ's RFC determination is not supported by substantial evidence in this case and must be reevaluated. On remand, the ALJ shall reevaluate the medical evidence and Plaintiff's subjective complaints, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim in completing the five-step analysis.

///

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 31**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED April 19, 2021.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE